```
                                        FILED
                               CLERK, U.S. DISTRICT COURT

                                      08/14/19

                               CENTRAL DISTRICT OF CALIFORNIA
                               BY: _____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>     v.<br><br>CHARLES THOMAS SEBESTA,<br><br>     Defendant. | CR No. 19 CR 00463 - SVW<br><br><u>I N D I C T M E N T</u><br><br>[18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1344(2): Bank Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. §§ 982, and 1028, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH SIX

[18 U.S.C. § 1343]

A.  <u>INTRODUCTORY ALLEGATIONS</u>

At times relevant to this Indictment:

1.  Defendant CHARLES THOMAS SEBESTA was a resident of Los Angeles County, which is located within the Central District of California.

2.  Defendant SEBESTA was hired as a facilities manager for the Fifth Church of Christ, Scientist, of Los Angeles ("the Church") in or around 2001. In that capacity, and later as a member of the

Church and its board, defendant SEBESTA had direct and indirect access to, and control over, the financial assets and operations of the Church, including at least two of the Church's California National Bank ("Cal National") accounts and its successor accounts at US Bank (collectively, "Church bank accounts"), as well as Church accounts at Morgan Stanley Smith Barney.

3.  Church Member No. 1 served as a clerk for the Church, and was an authorized signatory on Church bank accounts.

4.  The Church was a California domestic nonprofit corporation headquartered in Los Angeles County.

5.  Prior to on or about November 7, 2008, the Church owned and occupied property at or around 7107 Hollywood Boulevard, Los Angeles, California (the "Church Property").

6.  Defendant SEBESTA maintained, controlled, and had signatory and other authority over the following businesses, fictitious business names, and bank accounts at Bank of America associated with them: Zurich America, Grainger, Sebesta Partners, Inc., and SofteWare.

7.  Defendant SEBESTA also maintained, controlled, and had signatory and other authority over additional bank accounts at Bank of America and Wells Fargo, two of which were in the name of defendant SEBESTA's wife, M.S., and one of which was in the name of defendant SEBESTA's son, A.S.

8.  Cal National and US Bank were federally-insured financial institutions.

9.  From no later than on or about September 2012 until January 2013, defendant SEBESTA also worked as a Development Director for a private high school located within Los Angeles County.

B. THE SCHEME TO DEFRAUD

10. Beginning on an unknown date, but no later than in or about August 2006, and continuing until at least in or about December 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant SEBESTA, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, which violation affected at least one financial institution.

11. The scheme to defraud operated, in substance, as follows:

    a. After being hired as a facilities manager for the Church in or about 2001, defendant SEBESTA began to gain the trust of the Church and its members.

    b. By in or around 2005, defendant SEBESTA had also joined the Church as a member, began serving as Chairperson of its board, and had effected the appointment of Church Member No. 1 as a clerk for the Church.

    c. Beginning no later than in or around August 2006, defendant SEBASTA began causing the Church to make checks and other disbursements payable to fictitious entities that appeared legitimate because their names were similar to real businesses. Unbeknownst to the Church, defendant SEBASTA had opened bank accounts in these fictitious entities' names and deposited the Church's checks and disbursements into those bank accounts.

    d. Specifically, defendant SEBESTA initially caused the Church to make payments and draft checks payable to "Grainger," the

fictitious business name in which defendant SEBESTA held a Bank of America account, which name was the same as a legitimate, but unrelated, industrial supply company.

   e.   After the Church's accountant raised concerns regarding Grainger-related anomalies in the Church's accounts in or around August 2007, defendant SEBESTA continued his scheme to defraud by routing Church funds held in Church accounts to an account at Bank of America that defendant SEBESTA controlled in the fictitious name of "Zurich America," a name similar to the unrelated insurance company, Zurich North America.

   f.   Defendant SEBESTA forged the signature of Church Member No. 1 on Church checks drawn against Cal National and US Bank accounts and made payable to Zurich America, "cash," defendant SEBESTA himself, and defendant SEBESTA's loved ones, including his son, A.S., his wife, M.S., and another female companion (defendant SEBESTA's "female companion") who was a codefendant with defendant SEBESTA in a California prosecution.  Defendant SEBESTA and others presented those checks for cash and deposit in bank accounts defendant SEBESTA owned, controlled, and used for the benefit of himself, his family, and his female companion.

   g.   In or around October and November 2008, defendant SEBESTA oversaw the sale of the Church Property to a real estate developer (the "Real Estate Developer") for approximately $12,785,000, which was transferred to the Church's account at Cal National.

   h.   Defendant SEBESTA converted a significant majority of the proceeds from the $12,785,000 sale of the church property to his personal use, including by purchasing a home with approximately

4

$2,019,000 in cashier's checks that he caused to be drawn from Church bank accounts, which checks defendant SEBESTA falsely recorded in Church records as "donations" and environmental remediation payments to a "Sky Blue Environmental" company.

i. To further conceal his scheme to defraud, and in furtherance of it, from no later than on or about November 2009 through November 14, 2011, defendant SEBESTA routed approximately $4,000,000 of Church funds into the Church's Morgan Stanley Smith Barney account, and then effected wire transactions of that same amount out of that account and into the Church's US Bank accounts, from which defendant SEBESTA caused checks to be issued to his Bank of America account in the fictitious name of Zurich America.

j. From in or around February 2009 through April 2010, defendant SEBESTA also caused the Church to obtain cashier's checks drawn against Church bank accounts for approximately $1,860,000 payable to the United States Treasury, as well as approximately $309,622 payable to the California Franchise Tax Board. Defendant SEBESTA applied these wrongfully-obtained checks toward his own personal tax accounts in order to generate overpayment refunds from both the United States Treasury and the California Franchise Tax Board. In this way, defendant SEBESTA concealed that the cashier's checks he caused to be obtained were used to convert Church funds for his own personal and fraudulent benefit.

k. To conceal the extent of his theft and avoid scrutiny by the Church, its members, and related churches and charities, defendant SEBESTA falsely represented that $4 million of that $12,785,000 would be donated to the principal Church of Christ,

5

Scientist, located in Boston, Massachusetts (the "Mother Church"), when, in fact, no such donation was ever made.

l.   Also in furtherance of the scheme to defraud, and to lull Church members from inquiring further into Church finances, in or around February 2013, defendant SEBESTA also created an email account (the "Fraudulent Email Account") bearing the name of an executive of the Real Estate Developer to whom the Church Property was sold.  Impersonating that executive in emails defendant SEBESTA sent to Church members from no later than in or around February 2013 through at least in or around September 2014, defendant SEBESTA fraudulently represented to Church members that the Real Estate Developer was making donations to the Church, including in the form of payments for the Church's rent at a new location, and that the Developer generally supported the Church and held defendant SEBESTA in esteem.

m.   Also in furtherance of the scheme to defraud, from at least in or around September 2012 through January 2013, defendant SEBESTA wrongfully converted, without lawful authority, approximately $34,032 of his private-high-school employer's funds to defendant SEBESTA's personal benefit, including by creating and submitting false and forged invoices from what seemed to be a legitimate company, Softerware, which invoices defendant SEBESTA caused the private high school to pay into defendant SEBESTA's Bank of America account in the similar, but fictitious name, "Softeware."

n.   Also in furtherance of the scheme to defraud, from at least in or around July 2013 through December 2013, defendant SEBESTA, converted approximately $36,282, which had been donated to the Church by the estate of Donor No. 1, to defendant SEBESTA's own

benefit, including by presenting Church checks bearing the forged signature of Church Member No. 1 and drawing upon Church bank accounts, for cash or deposit into his own accounts and accounts held by his loved ones, including his wife, M.S., and his son, A.S.

o.  Also in furtherance of the scheme to defraud, on or about August 30, 2013, defendant SEBESTA, executed an agreement on behalf of the Church to sell, assign, and transfer all royalty rights to a song, which had been donated to the Church by the estate of a former church member, Donor No. 2, in exchange for approximately $74,375, which funds defendant SEBESTA then converted for his own personal benefit by presenting Church checks bearing the forged signature of Church Member No. 1 and drawing upon Church bank accounts, for cash or deposit into his own accounts and accounts held by his loved ones, including defendant SEBESTA's wife, M.S., and his son, A.S.

p.  In carrying out this fraudulent scheme, defendant SEBESTA created new and increased risks of loss to at least one financial institution.

q.  In total, defendant SEBESTA fraudulently converted at least approximately $11,438,213 of Church assets and approximately $34,032 of his private-high-school employer's assets to his own benefit and personal use.

r.  Among other improper personal uses of the funds defendant SEBESTA wrongfully converted from the Church and other victims, in or around June 2010, defendant SEBESTA purchased a membership at Disneyland's exclusive dining club, Club 33, with funds defendant SEBESTA had wrongfully converted from the Church. Defendant SEBESTA then used Club 33 to host high-profile

7

entertainment companies, including professional-sports teams, and their employees. To further and conceal his fraud, defendant SEBESTA used another misleading email address, "ctsebesta@defence.uk.com," in communications concerning Disney and Club 33, which falsely suggested defendant SEBESTA was affiliated with the government of the United Kingdom.

        s.   In or around November 2016, the Mother Church began to investigate whether it had received the $4 million promised by defendant SEBESTA and the Church. In furtherance of the scheme to defraud, in an attempt to avoid or delay its discovery and any efforts by Cal National and US Bank to recover funds obtained through defendant SEBESTA's unauthorized withdrawals and presentations of forged-signature checks, and in order to retain use and control over money and property wrongfully taken from the Church, defendant SEBESTA sent lulling letters and emails to the Mother Church, its representatives, the Church, and its members. In these letters and emails, defendant SEBESTA falsely assured the recipients that the Church's finances and records were in good order, and urged them to permit the Church to conduct its own investigation "without distraction and interference" from the Mother Church. Defendant SEBESTA sent these lulling letters and emails in his own name and also while impersonating Church Member No. 1.

C.   <u>USE OF THE WIRES</u>

    12.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud the Church, defendant SEBESTA, together with others known and unknown to the Grand Jury, transmitted and caused the transmission of the

following items by means of wire and radio communication in interstate and foreign commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| ONE | 3/10/10 | Interstate bank wire of $500,000 from the Church's Morgan Stanley Smith Barney Account to its US Bank account. |
| TWO | 2/16/11 | Interstate bank wire of $350,000 from the Church's Morgan Stanley Smith Barney Account to its US Bank Account. |
| THREE | 2/14/13 | Email sent by defendant SEBESTA, impersonating an executive of the Real Estate Developer, from the Fraudulent Email Account via servers hosted in Arizona, to a to defendant SEBESTA's email account, an account of a Church member, and a Church email account, thanking defendant SEBESTA for a prior email, and asking whether a Church member was "the same person who attempted to contact" the executive "with reservations about your Church move." |
| FOUR | 9/3/13 | Interstate bank wire of $74,375 from the Royalty Exchange to the Church's US Bank account in consideration for defendant SEBESTA's unauthorized sale of song royalty rights previously donated to the Church by Donor No. 2. |
| FIVE | 9/4/14 | Email sent by defendant SEBESTA, impersonating an executive of the Real Estate Developer, from the Fraudulent Email Account via servers hosted in Arizona, to a Church email account and an email account of a Church member, stating that the executive would be "calling our accounting department first thing in the morning to find out the status of the donations that we send [sic] to Fifth Church." |
| SIX | 11/24/16 | Email sent by defendant SEBESTA from his personal email account to a Church email account and email accounts of two Church members, passing through Atlanta, Georgia, urging the Church to "let us do our research and investigate" and assuring the Church and its members, "[w]e have always conducted ourselves by using best business practices and keeping good records." |

## COUNTS SEVEN THROUGH ELEVEN

[18 U.S.C. § 1344(2)]

13. The Grand Jury realleges paragraphs 1 through 9 and 11 of this Indictment here.

A. THE SCHEME TO DEFRAUD

14. Beginning on an unknown date, but no later than in or about August 2006, and continuing until at least in or about December 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant SEBESTA, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, executed a scheme to obtain moneys, funds, assets, and other property owned by and in the custody and control of Cal National and US Bank by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, as specifically described in paragraphs 1 through 9 and 11 of this Indictment.

B. EXECUTIONS OF THE FRAUDULENT SCHEME

15. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant SEBESTA, together with others known and unknown to the Grand Jury, knowingly committed the following acts, each of which constituted an execution and attempted execution of the fraudulent scheme:

| COUNT | DATE | ACT |
|---|---|---|
| SEVEN | 12/31/12 | Presentation for deposit into defendant SEBESTA's Bank of America account a check for $843.29, bearing Church Member No. 1's forged signature, payable to "Zurich America" and drawing upon the Church's US Bank account. |

| COUNT | DATE | ACT |
|---|---|---|
| EIGHT | 7/23/13 | Presentation for ultimate deposit into a Wells Fargo account in the name of defendant SEBESTA's wife, M.S., check number 10021 for $3,700 bearing Church Member No. 1's forged signature, payable to "cash," and drawing upon the Church's US Bank account. |
| NINE | 9/16/13 | Presentation for deposit into a Bank of America account in the name of defendant SEBESTA's son, A.S., check number 10037 for $1,150 bearing Church Member No. 1's forged signature, payable to defendant SEBESTA's son, A.S., and drawing upon the Church's US Bank account. |
| TEN | 10/3/13 | Presentation for deposit into a Bank of America account in the name of defendant SEBESTA's son, A.S., check number 10070 for $1,783 bearing Church Member No. 1's forged signature, payable to defendant SEBESTA's son, A.S., and drawing upon the Church's US Bank account. |
| ELEVEN | 10/22/16 | Presentation for deposit into a Bank of America account in the name of defendant SEBESTA's son, A.S., check number 22107 for $300 bearing Church Member No. 1's forged signature, payable to defendant SEBESTA's son, A.S., and drawing upon the Church's US Bank account. |

## COUNT TWELVE

[18 U.S.C. § 1028A(a)(1)]

16. The Grand Jury realleges paragraphs 1 through 9 and 11 through 12 of this Indictment here.

17. On or about September 4, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant SEBESTA knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant SEBESTA knew belonged to another person, namely, the name of an executive of the Real Estate Developer, during and in relation to the offense of Wire Fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Five of this Indictment.

COUNT THIRTEEN

[18 U.S.C. § 1028A(a)(1)]

18.  The Grand Jury realleges paragraphs 1 through 9, 11, and 13 through 15 of this Indictment here.

19.  On or about October 22, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant SEBESTA knowingly transferred, possessed, and used, without lawful authority, means of identification that defendant SEBESTA knew belonged to another person, namely, the name and signature of Church Member No. 1, during and in relation to the offense of Bank Fraud, a felony violation of Title 18, United States Code, Section 1344(2), as charged in Count Eleven of this Indictment.

1                          FORFEITURE ALLEGATION ONE

2                     [18 U.S.C. § 982; 28 U.S.C. § 2461(c)]

3      20.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4 Procedure, notice is hereby given that the United States of America

5 will seek forfeiture as part of any sentence, pursuant to Title 18,

6 United States Code, Section 982(a)(2), and Title 28, United States

7 Code, Section 2461(c), in the event of the defendant's conviction of

8 the offenses set forth in any of Counts One through Eleven of this

9 Indictment.

10     21.   The defendant, if so convicted, shall forfeit to the United

11 States of America the following:

12         (a) All right, title and interest in any and all property,

13 real or personal, constituting, or derived from, any proceeds

14 obtained, directly or indirectly, as a result of the offense; and

15         (b) To the extent such property is not available for

16 forfeiture, a sum of money equal to the total value of the property

17 described in subparagraph (a).

18     22.   Pursuant to Title 21, United States Code, Section 853(p),

19 as incorporated by Title 18, United States Code, Section 982(b) and

20 Title 28, United States Code, Section 2461(c), the defendant, if so

21 convicted, shall forfeit substitute property, up to the total value

22 of the property described in the preceding paragraph if, as the

23 result of any act or omission of the defendant, the property

24 described in the preceding paragraph, or any portion thereof: (a)

25 cannot be located upon the exercise of due diligence; (b) has been

26 transferred, sold to or deposited with a third party; (c) has been

27 placed beyond the jurisdiction of the court; (d) has been

28

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

## FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1028; 28 U.S.C. § 2461(c)]

23. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 1028 and Title 28, United States Code, Section 2461(c) in the event of the defendant's conviction of the offenses set forth in any of Counts Twelve or Thirteen of this Indictment.

24. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b) Any personal property used or intended to be used to commit the offense; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

24. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b) and 1028(g), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the

16

court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/
Foreperson

NICOLA T. HANNA
United States Attorney

*Brandon Fox*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

MONICA E. TAIT
Assistant United States Attorney
Deputy Chief, Major Frauds Section

ADAM P. SCHLEIFER
Assistant United States Attorney
Major Frauds Section