NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756
    Facsimile: (213) 894-6265
    E-mail:   Valerie.makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>         v.<br><br>CHARLES THOMAS SEBESTA,<br><br>       Defendant. | No. CR 19-463-SVW<br><br>PLEA AGREEMENT FOR DEFENDANT<br>CHARLES THOMAS SEBESTA |

1.   This constitutes the plea agreement between Charles Thomas Sebesta ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

    a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts Five and Eight of the indictment in United States v. Charles Thomas Sebesta,

CR No. 19-463-SVW, which charge defendant with wire fraud affecting a financial institution (Count Five) in violation of 18 U.S.C. § 1343 and bank fraud (Count Eight) in violation of 18 U.S.C. § 1344(2).

      b.   Not contest facts agreed to in this agreement.

      c.   Abide by all agreements regarding sentencing contained in this agreement.

      d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

      e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

      f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

      g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

      h.   Authorize the USAO to obtain a credit report immediately upon defendant's entry of a guilty plea.

      i.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

      j.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at

usacac.FinLit@usdoj.gov or mail to the USAO Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty ("forfeitable assets").

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to forfeitable assets and to the forfeiture of such assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the forfeitable assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against forfeitable assets.  If defendant submitted a claim and/or petition for remission for all or part of any forfeitable assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of those assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of forfeitable assets.

f.   Not to claim that reasonable cause to seize forfeitable assets was lacking.

1        g.   To prevent the transfer, sale, destruction, or loss of

2 any and all assets described above to the extent defendant has the

3 ability to do so.

4        h.   That forfeiture of forfeitable assets shall not be

5 counted toward satisfaction of any special assessment, fine,

6 restitution, costs, or other penalty the Court may impose.

7        i.   With respect to any criminal forfeiture ordered as a

8 result of this plea agreement, defendant waives: (1) the requirements

9 of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

10 notice of the forfeiture in the charging instrument, announcements of

11 the forfeiture sentencing, and incorporation of the forfeiture in the

12 judgment; (2) all constitutional and statutory challenges to the

13 forfeiture (including by direct appeal, habeas corpus or any other

14 means); and (3) all constitutional, legal, and equitable defenses to

15 the forfeiture of the forfeitable assets in any proceeding on any

16 grounds including, without limitation, that the forfeiture

17 constitutes an excessive fine or punishment.  Defendant acknowledges

18 that forfeiture of the forfeitable assets is part of the sentence

19 that may be imposed in this case and waives any failure by the Court

20 to advise defendant of this, pursuant to Federal Rule of Criminal

21 Procedure 11(b)(1)(J), at the time the Court accepts defendant's

22 guilty pleas.

THE USAO'S OBLIGATIONS

23

24    4.   The USAO agrees to:

25        a.   Not contest facts agreed to in this agreement.

26        b.   Abide by all agreements regarding sentencing contained

27 in this agreement.

28

1          c.    At the time of sentencing, move to dismiss the

2    remaining counts of the indictment as against defendant.  Defendant

3    agrees, however, that at the time of sentencing the Court may

4    consider any dismissed charges in determining the applicable

5    Sentencing Guidelines range, the propriety and extent of any

6    departure from that range, and the sentence to be imposed.

7          d.    At the time of sentencing, provided that defendant

8    demonstrates an acceptance of responsibility for the offenses up to

9    and including the time of sentencing, recommend a two-level reduction

10   in the applicable Sentencing Guidelines offense level, pursuant to

11   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

12   additional one-level reduction if available under that section.

13                          NATURE OF THE OFFENSES

14        5.   Defendant understands that for defendant to be guilty of

15   the crime charged in Count Five, that is, wire fraud affecting a

16   financial institution in violation of Title 18 United States Code,

17   Section 1343, the following must be true:

18          a.    Defendant knowingly devised or participated in a

19   scheme or plan to defraud, or a scheme or plan for obtaining money or

20   property by means of false or fraudulent pretenses, representations,

21   or promises;

22          b.    The statements made as part of the scheme were

23   material.  That is, they had a natural tendency to influence, or were

24   capable of influencing, a person to part with money or property;

25          c.    Defendant acted with the intent to defraud, i.e., with

26   the intent to deceive or cheat; and

27

28

d.    Defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme; and

e.    Defendant's scheme affected a financial institution.

6.    Defendant understands that for defendant to be guilty of the crime charged in Count Eight, that is, bank fraud, in violation of Title 18 United States Code, Section 1344(2), the following must be true:

a.    Defendant knowingly carried out a scheme or plan to obtain money or property from a financial institution by making false statements or promises;

b.    Defendant knew that those statements or promises were false;

c.    Those statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;

d.    The defendant acted with the intent to defraud; and

e.    The financial institution was federally chartered or federally insured.

## PENALTIES AND RESTITUTION

7.    Defendant understands that the statutory maximum sentence that the Court can impose for the violation of Title 18, United States Code, Section 1343 charged in Count Five of the indictment in this case is: 30 years of imprisonment; a 5-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States

1   Code, Section 1344(2), is: 30 years of imprisonment; a 5-year period
2   of supervised release; a fine of $1,000,000 or twice the gross gain
3   or gross loss resulting from the offense, whichever is greatest; and
4   a mandatory special assessment of $100.

5        9.   Defendant understands, therefore, that the total maximum
6   sentence for all offenses to which defendant is pleading guilty is:
7   60 years of imprisonment; a 5-year period of supervised release; a
8   fine of $2,000,000 or twice the gross gain or gross loss resulting
9   from the offenses, whichever is greatest; and a mandatory special
10  assessment of $200.

11       10.  Defendant understands that defendant will be required to
12  pay full restitution to the victims of the offenses to which
13  defendant is pleading guilty.  Defendant agrees that, in return for
14  the USAO's compliance with its obligations under this agreement, the
15  Court may order restitution to persons other than the victims of the
16  offenses to which defendant is pleading guilty and in amounts greater
17  than those alleged in the counts to which defendant is pleading
18  guilty.  In particular, defendant agrees that the Court may order
19  restitution to any victim of any of the following for any losses
20  suffered by that victim as a result of: (a) any relevant conduct, as
21  defined in U.S.S.G. § 1B1.3, in connection with the offenses to which
22  defendant is pleading guilty and (b) any counts dismissed pursuant to
23  this agreement as well as all relevant conduct, as defined in
24  U.S.S.G. § 1B1.3, in connection with those counts.  The parties
25  currently believe that the applicable amount of restitution is
26  approximately $11,472,245, but recognize and agree that this amount
27  could change based on facts that come to the attention of the parties
28  prior to sentencing.

11.   Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

12.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty pleas, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

1   14.   Defendant understands that, if defendant is not a United
2   States citizen, the felony convictions in this case may subject
3   defendant to: removal, also known as deportation, which may, under
4   some circumstances, be mandatory; denial of citizenship; and denial
5   of admission to the United States in the future.   The Court cannot,
6   and defendant's attorney also may not be able to, advise defendant
7   fully regarding the immigration consequences of the felony
8   convictions in this case.   Defendant understands that unexpected
9   immigration consequences will not serve as grounds to withdraw
10  defendant's guilty pleas.

                              FACTUAL BASIS

12  15.   Defendant admits that defendant is, in fact, guilty of the
13  offenses to which defendant is agreeing to plead guilty.   Defendant
14  and the USAO agree to the statement of facts provided below and agree
15  that this statement of facts is sufficient to support pleas of guilty
16  to the charges described in this agreement and to establish the
17  Sentencing Guidelines factors set forth in paragraph 17 below, but is
18  not meant to be a complete recitation of all facts relevant to the
19  underlying criminal conduct or all facts known to either party that
20  relate to that conduct:

21  Beginning no later than August 2006, and continuing until at
22  least December 2016, in Los Angeles County, within the Central
23  District of California, and elsewhere, defendant, knowingly and with
24  intent to defraud, devised, participated in, and executed a scheme to
25  defraud victims as to material matters, and to obtain money and
26  property, including funds and assets owned by and in the custody and
27  control of California National Bank ("Cal National) and US Bank, by
28  means of material false and fraudulent pretenses, representations,

1  and promises, and the concealment of material facts, which scheme

2  also affected multiple federally-insured financial institutions.

3        After being hired as a facilities manager for the Fifth Church

4  of Christ, Scientist, of Los Angeles ("the Church") in or about 2001,

5  defendant began to gain the trust of the Church and its members.  By

6  in or around 2005, defendant had also joined the Church as a member,

7  began serving as Chairperson of its board, and had effected the

8  appointment of another church member as a clerk for the Church ("the

9  Church's clerk").  Beginning no later than in or around August 2006,

10  defendant began causing the Church to make checks and other

11  disbursements payable to fictitious entities that appeared legitimate

12  because their names were similar to real businesses.  Unbeknownst to

13  the Church, defendant had opened bank accounts in these fictitious

14  entities' names and deposited the Church's checks and disbursements

15  into those bank accounts for defendant's wrongful personal benefit.

16  Specifically, defendant caused the Church to make payments and draft

17  checks payable to "Grainger," the fictitious business name in which

18  defendant held a Bank of America account, which name was the same as

19  a legitimate, but unrelated, industrial supply company.  After the

20  Church's accountant raised concerns regarding Grainger-related

21  anomalies in the Church's accounts in or around August 2007,

22  defendant continued his scheme to defraud by routing Church funds

23  held in Church accounts to an account at Bank of America that

24  defendant controlled in the fictitious name of "Zurich America," a

25  name similar to the unrelated insurance company, Zurich North

26  America.

27        Defendant forged the signature of the Church's clerk on Church

28  checks drawn against Cal National and US Bank accounts and made

1   payable to Zurich America, "cash," defendant himself, and his loved
2   ones, including his son, his wife, and another female companion
3   (defendant SEBESTA's "female companion") who was a codefendant with
4   defendant in a California prosecution.  Defendant then presented
5   those checks for cash and deposit in bank accounts defendant owned,
6   controlled, and used for the benefit of himself, his family, and his
7   female companion.

8        In or around October and November 2008, defendant oversaw the
9   sale of the Church Property to a real estate developer (the "Real
10  Estate Developer") for approximately $12,785,000.  Defendant
11  converted a significant majority of the proceeds from that sale of
12  church property to his personal use, including by purchasing a home
13  with approximately $2,019,000 in cashier's checks that he caused to
14  be drawn from Church bank accounts, which checks defendant falsely
15  recorded in Church records as "donations" and environmental
16  remediation payments to a "Sky Blue Environmental" company.

17       To further conceal his scheme to defraud, and in furtherance of
18  it, from no later than on or about November 2009 through November 14,
19  2011, defendant routed approximately $4,000,000 of Church funds into
20  the Church's Morgan Stanley Smith Barney account, and then effected
21  wire transactions of that same amount out of that account and into
22  the Church's US Bank accounts, from which defendant caused checks to
23  be issued to his Bank of America account in the fictitious name of
24  Zurich America.

25       From in or around February 2009 through April 2010, defendant
26  also caused the Church to obtain cashier's checks drawn against
27  Church bank accounts for approximately $1,860,000 payable to the
28  United States Treasury, as well as approximately $309,622 payable to

the California Franchise Tax Board.  Defendant applied these
wrongfully-obtained checks toward his own personal tax accounts in
order to generate overpayment refunds from both the United States
Treasury and the California Franchise Tax Board, and to further
conceal his ongoing scheme.

Around February 2013, defendant also created an email account
(the "Fraudulent Email Account") bearing the name of an executive of
the Real Estate Developer to whom the Church Property was sold.
Impersonating that executive in emails defendant sent to Church
members from no later than February 2013 through at least September
2014, defendant fraudulently represented to Church members that the
Real Estate Developer was making donations to the Church, including
in the form of payments for the Church's rent at a new location, and
that the Developer supported the Church and held defendant in high
esteem.

In addition, from no later than September 2012 through January
2013, defendant wrongfully converted, without lawful authority,
approximately $34,032 from a separate employer of his, a private-high
school in Los Angeles County. Defendant did this by creating and
submitting false and forged invoices from what seemed to be a
legitimate company, Softerware, which invoices defendant caused the
private high school to pay into defendant's Bank of America account
in the similar, but fictitious name, "Software."

Additionally, from July 2013 through December 2013, defendant
converted approximately $36,282, which had been donated to the Church
by the estate of a donor, to defendant's own benefit.  Moreover, on
or about August 30, 2013, defendant misappropriated all royalty
rights to a song that had been donated to the Church by the estate of

a different former church member, thereby converting an additional $74,375 of Church assets to his own wrongful personal benefit.

In carrying out his fraudulent scheme, defendant created new and increased risks of loss to multiple financial institutions, which had cleared checks containing, among other things, forged signatures presented by defendant. Defendant also employed sophisticated means to perpetrate his fraud, including false and fraudulent email accounts, fictitious business names and bank accounts, and forgeries upon checks. Defendant further caused substantial financial hardship to the Church by depleting substantially all of its assets. In total, defendant SEBESTA fraudulently converted at least approximately $11,438,213 of Church assets and approximately $34,032 of separate funds from his private-high-school employer to his own wrongful personal benefit and use.

On or about September 4, 2014, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud and as described in Count Five of the Indictment in this case, defendant SEBESTA transmitted and caused the transmission of the following item by means of wire and radio communication in interstate and foreign commerce: An Email sent by defendant SEBESTA, impersonating an executive of the Real Estate Developer, from the Fraudulent Email Account via servers hosted in Arizona, to a Church email account and an email account of a Church member, stating that the executive would be "calling our accounting department first thing in the morning to find out the status of the donations that we send [sic] to Fifth Church."

1    On or about July 23, 2013, in Los Angeles County, California,

2  defendant SEBESTA, knowingly presented for ultimate deposit into a

3  Wells Fargo account in the name of defendant SEBESTA's wife, M.S.,

4  check number 10021 for $3,700 bearing Church Member No. 1's forged

5  signature, payable to "cash," and drawing upon the Church's US Bank

6  account, which constituted an execution and attempted execution of

7  the fraudulent scheme to defraud financial institutions as alleged in

8  Count Eight of the Indictment.

9                          SENTENCING FACTORS

10    16.  Defendant understands that in determining defendant's

11  sentence the Court is required to calculate the applicable Sentencing

12  Guidelines range and to consider that range, possible departures

13  under the Sentencing Guidelines, and the other sentencing factors set

14  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

15  Sentencing Guidelines are advisory only, that defendant cannot have

16  any expectation of receiving a sentence within the calculated

17  Sentencing Guidelines range, and that after considering the

18  Sentencing Guidelines and the other § 3553(a) factors, the Court will

19  be free to exercise its discretion to impose any sentence it finds

20  appropriate up to the maximum set by statute for the crimes of

21  conviction.

22    17.  Defendant and the USAO agree to the following applicable

23  Sentencing Guidelines factors:

24  Base Offense Level:              7         U.S.S.G. § 2B1.1(a)(1)

25  Specific Offense
    Characteristics:

26
    Loss Exceeding $9,500,000      +20       U.S.S.G. § 2B1.1(b)(1)(K)
27

28

| Substantial Financial Hardship to One Victim | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |
|---|---|---|
| Sophisticated Means | +2 | U.S.S.G. § 2B1.1(b)(10)(C) |

Adjustments:

| Abuse of Position of Trust | +2 | U.S.S.G. § 3B1.3 |
|---|---|---|

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

18.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

20.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel — and if necessary have the Court appoint counsel — at trial.   Defendant understands, however, that, defendant retains the right to be represented by counsel — and if necessary have the Court appoint counsel — at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

1       e.   The right to confront and cross-examine witnesses

2 against defendant.

3       f.   The right to testify and to present evidence in

4 opposition to the charges, including the right to compel the

5 attendance of witnesses to testify.

6       g.   The right not to be compelled to testify, and, if

7 defendant chose not to testify or present evidence, to have that

8 choice not be used against defendant.

9       h.   Any and all rights to pursue any affirmative defenses,

10 Fourth Amendment or Fifth Amendment claims, and other pretrial

11 motions that have been filed or could be filed.

12                     WAIVER OF APPEAL OF CONVICTION

13     21.  Defendant understands that, with the exception of an appeal

14 based on a claim that defendant's guilty pleas were involuntary, by

15 pleading guilty defendant is waiving and giving up any right to

16 appeal defendant's convictions on the offenses to which defendant is

17 pleading guilty.  Defendant understands that this waiver includes,

18 but is not limited to, arguments that the statutes to which defendant

19 is pleading guilty are unconstitutional, and any and all claims that

20 the statement of facts provided herein is insufficient to support

21 defendant's pleas of guilty.

22            WAIVERS OF APPEAL AND COLLATERAL ATTACK

23     22.  Defendant agrees that, provided the Court imposes a total

24 term of imprisonment on all counts of conviction of no more than 135

25 months, defendant gives up the right to appeal all of the following:

26 (a) the procedures and calculations used to determine and impose any

27 portion of the sentence; (b) the term of imprisonment imposed by the

28 Court; (c) the fine imposed by the Court, provided it is within the

statutory maximum; (d) to the extent permitted by law, the
constitutionality or legality of defendant's sentence, provided it is
within the statutory maximum; (e) the amount and terms of any
restitution order, provided it requires payment of no more than
$11,472,245; (f) the term of probation or supervised release imposed
by the Court, provided it is within the statutory maximum; and
(g) any of the following conditions of probation or supervised
release imposed by the Court: the conditions set forth in General
Order 18-10 of this Court; the drug testing conditions mandated by 18
U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use
conditions authorized by 18 U.S.C. § 3563(b)(7).

23. Defendant also gives up any right to bring a post-
conviction collateral attack on the convictions or sentence,
including any order of restitution, except a post-conviction
collateral attack based on a claim of ineffective assistance of
counsel, a claim of newly discovered evidence, or an explicitly
retroactive change in the applicable Sentencing Guidelines,
sentencing statutes, or statutes of conviction. Defendant
understands that this waiver includes, but is not limited to,
arguments that the statutes to which defendant is pleading guilty are
unconstitutional, and any and all claims that the statement of facts
provided herein is insufficient to support defendant's pleas of
guilty.

24. The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above and
(b) the Court imposes a term of imprisonment of no less than 108
months, the USAO gives up its right to appeal any portion of the
sentence, with the exception that the USAO reserves the right to

1   appeal the following: the amount of restitution ordered if that
2   amount is less than $11,472,245.

3                 RESULT OF WITHDRAWAL OF GUILTY PLEA

4        25.  Defendant agrees that if, after entering guilty pleas
5   pursuant to this agreement, defendant seeks to withdraw and succeeds
6   in withdrawing defendant's guilty pleas on any basis other than a
7   claim and finding that entry into this plea agreement was
8   involuntary, then (a) the USAO will be relieved of all of its
9   obligations under this agreement; and (b) should the USAO choose to
10  pursue any charge that was either dismissed or not filed as a result
11  of this agreement, then (i) any applicable statute of limitations
12  will be tolled between the date of defendant's signing of this
13  agreement and the filing commencing any such action; and
14  (ii) defendant waives and gives up all defenses based on the statute
15  of limitations, any claim of pre-indictment delay, or any speedy
16  trial claim with respect to any such action, except to the extent
17  that such defenses existed as of the date of defendant's signing this
18  agreement.

19               RESULT OF VACATUR, REVERSAL OR SET-ASIDE

20       26.  Defendant agrees that if any count of conviction is
21  vacated, reversed, or set aside, the USAO may: (a) ask the Court to
22  resentence defendant on any remaining counts of conviction, with both
23  the USAO and defendant being released from any stipulations regarding
24  sentencing contained in this agreement, (b) ask the Court to void the
25  entire plea agreement and vacate defendant's guilty pleas on any
26  remaining counts of conviction, with both the USAO and defendant
27  being released from all their obligations under this agreement, or
28  (c) leave defendant's remaining convictions, sentence, and plea

                                    18

1  agreement intact.  Defendant agrees that the choice among these three

2  options rests in the exclusive discretion of the USAO.

3  <u>EFFECTIVE DATE OF AGREEMENT</u>

4      27.  This agreement is effective upon signature and execution of

5  all required certifications by defendant, defendant's counsel, and an

6  Assistant United States Attorney.

7  <u>BREACH OF AGREEMENT</u>

8      28.  Defendant agrees that if defendant, at any time after the

9  effective date of this agreement, knowingly violates or fails to

10  perform any of defendant's obligations under this agreement ("a

11  breach"), the USAO may declare this agreement breached.  All of

12  defendant's obligations are material, a single breach of this

13  agreement is sufficient for the USAO to declare a breach, and

14  defendant shall not be deemed to have cured a breach without the

15  express agreement of the USAO in writing.  If the USAO declares this

16  agreement breached, and the Court finds such a breach to have

17  occurred, then: (a) if defendant has previously entered guilty pleas

18  pursuant to this agreement, defendant will not be able to withdraw

19  the guilty pleas, and (b) the USAO will be relieved of all its

20  obligations under this agreement.

21      29.  Following the Court's finding of a knowing breach of this

22  agreement by defendant, should the USAO choose to pursue any charge

23  that was either dismissed or not filed as a result of this agreement,

24  then:

25      a.   Defendant agrees that any applicable statute of

26  limitations is tolled between the date of defendant's signing of this

27  agreement and the filing commencing any such action.

28

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

30.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of

sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

32.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one — not the prosecutor, defendant's attorney, or the Court — can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

33.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

34.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney


_____          JANUARY 14, 2020
VALERIE L. MAKAREWICZ                       _____
Assistant United States Attorney            Date


_____          _____
CHARLES THOMAS SEBESTA                      Date
Defendant


_____          _____
PATRICK W. MCLAUGHLIN                       Date
Attorney for Charles Thomas Sebesta


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those

1 | contained in this agreement.  No one has threatened or forced me in

2 | any way to enter into this agreement.  I am satisfied with the

3 | representation of my attorney in this matter, and I am pleading

4 | guilty because I am guilty of the charges and wish to take advantage

5 | of the promises set forth in this agreement, and not for any other

6 | reason.

7

8 | _____          _____
   CHARLES THOMAS SEBESTA                     Date  11/21/19
   Defendant

9

10 | <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

11 |     I am Charles Thomas Sebesta's attorney.  I have carefully and

12 | thoroughly discussed every part of this agreement with my client.

13 | Further, I have fully advised my client of his rights, of possible

14 | pretrial motions that might be filed, of possible defenses that might

15 | be asserted either prior to or at trial, of the sentencing factors

16 | set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

17 | provisions, and of the consequences of entering into this agreement.

18 | To my knowledge: no promises, inducements, or representations of any

19 | kind have been made to my client other than those contained in this

20 | agreement; no one has threatened or forced my client in any way to

21 | enter into this agreement; my client's decision to enter into this

22 | agreement is an informed and voluntary one; and the factual basis set

23 | forth in this agreement is sufficient to support my client's entry of

24 | guilty pleas pursuant to this agreement.

25

26 | _____          _____
   PATRICK W. MCLAUGHLIN                      Date  11-21-19
   Attorney for Charles Thomas Sebesta

27

28