TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ADAM P. SCHLEIFER (Cal. Bar No. 313818)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4849
     Facsimile: (213) 894-6269
     E-mail:    adam.schleifer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-463-SVW |
|---|---|
| Plaintiff, | |
| v. | GOVERNMENT'S SENTENCING POSITION |
| CHARLES THOMAS SEBESTA, | Hearing Date: August 30, 2021<br>Hearing Time: 11:00 a.m.<br>Location:    Courtroom of the Hon. |
| Defendant. | Stephen V. Wilson |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Adam P. Schleifer, hereby files its sentencing position in this case.

This sentencing position is based upon the attached memorandum

//

//

//

//

//

of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 16, 2021           Respectfully submitted,

                                          TRACY L. WILKISON
                                        Acting United States Attorney

                                        SCOTT M. GARRINGER
                                        Assistant United States Attorney
                                        Chief, Criminal Division

                                        */s/ APS*

                                        ADAM P. SCHLEIFER
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Pursuant to the terms of his written plea agreement, defendant Charles Thomas Sebesta ("defendant") pleaded guilty on February 3, 2020 to Counts Five (wire fraud in violation of 18 U.S.C. § 1343) and Eight (bank fraud in violation of 18 U.S.C. § 1344(2)) of the thirteen-count indictment in this case.  (See Dkt. Nos. 1, 30.)

The United States Probation Office ("USPO") disclosed its Presentence Investigation Report ("PSR") and its sentencing recommendation on April 13, 2020. (Dkt. Nos. 31, 32.)  The USPO determined that the total offense level under the United States Sentencing Guidelines ("USSG") applicable to defendant's convictions is 30; that defendant's Criminal History Score of 3 establishes a USSG Criminal History Category of II; that the applicable USSG range of imprisonment is therefore 108-135 months; that the Guidelines term of supervised release is 2-5 years; that defendant owes restitution totaling $11,438,213 as well as a mandatory special assessment of $200; and that concurrent terms of imprisonment of 108 months would satisfy the sentencing factors of 18 U.S.C. § 3553(a).

The government does not object to the USPO's calculations of defendant's total Guidelines offense level, criminal history, or payment obligations.  For the reasons set forth below, the government recommends that the Court impose a within-Guidelines term of imprisonment of 130 months; a five-year term of supervised release; $11,438,213 in restitution according to the schedule set forth in the PSR; and the mandatory $200 special assessment.

## II. STATEMENT OF FACTS

For at least ten years, from at least 2006 through 2016, defendant functioned brazenly as what one victim aptly described as "a master serial-embezzler" and "master manipulator." (PSR ¶ 34.) Defendant's primary—but hardly only—criminal scheme preyed upon a Los Angeles Church, the Fifth Church of Christ, Scientist (the "Church"). Defendant insinuated himself into the Church's trust first by gaining employment as a facilities manager in 2001 and, by 2005, also joining as a member and serving as Chairperson of the Church's Board. (PSR ¶ 13; Dkt. No. 27 at 10.) Having wrested operational and financial control of the Church from its elderly members by 2006, defendant began a ten-year spree in which he treated the Church and its considerable assets as his own personal piggy bank, stealing and dissipating more than $11.4 million. (PSR ¶¶ 13-30.)

Among other means, defendant perpetrated his scheme by:
- forging signatures upon the Church's checks;
- creating fictitious accounting entries and false invoices payable to legitimate-sounding shell companies defendant created for his fraudulent purpose;
- causing the Church to sell its real property and embezzling the proceeds;
- intercepting bequests to the Church from the estates of deceased members and arrogating them for his own use and benefit;
- generating cashier's checks from Church accounts and using them for extravagant personal purchases of homes and other luxury items for himself and his family;

- dissipating Church assets by spending at least $9.6 million in luxury expenses for himself and his family,[1] including hundreds-of-thousands of dollars of expenses at a luxury hotel with a romantic partner;
- impersonating others and creating false and fraudulent email accounts and emails in their names; and
- causing the Church to fire, ostracize, and disbelieve those who raised concerns or threatened to impede defendant's fraudulent progress.

(See PSR ¶¶ 12–34; Dkt. No. 27 at 9–14.)

In other words, and in Guidelines terms, defendant stole $11,438,213 and destroyed a venerable church, its congregation, and the faith its congregants had in one another by employing sophisticated means to abuse his position of trust and cause the Church not only substantial, but ruinous, financial hardship. (See PSR ¶¶ 33–34, 42–47.)

In parallel to and concurrently with the frauds defendant perpetrated against the Church and the banks with whom the Church dealt, defendant also devised and executed three other fraudulent schemes. First, from at least September 2012 through January 2013, defendant embezzled some $34,000 from a separate employer of his (a private high school in Los Angeles) through a fictitious-invoice scheme that shared features with the fraud he perpetrated against the Church. (PSR ¶ 53.) Second, defendant defrauded a set of religious and medical charities, convictions and probation for which frauds did

---

[1] On August 16, 2021, defendant represented to the government that he had dissipated essentially all of the $11.4 million he'd stolen from the Church, with some $9.6 million in stolen funds spent on travel, entertainment, and other sundry credit-card expenses.

3

nothing to deter defendant from continuing in his as-yet undiscovered fraud against the Church. (PSR § 57.) Indeed, defendant continued to execute his scheme to defraud in this case at the very same time that he stood before a California court offering self-justifying pieties and false promises "to ensure I do not put myself or anyone else in this position again" as part of a successful effort to avoid a custodial conviction in connection with his state crimes. Third, defendant used ill-gotten Church monies and fraudulent email accounts and identities in connection with a scheme involving a professional sports franchise and an exclusive dining club at Disneyland. (See, e.g., Dkt. No. 1 at 7–8.)

For his fraudulent scheme against the Church, defendant was charged in a thirteen-count Indictment of August 14, 2019. Pursuant to the parties' plea agreement (Dkt. No. 27), defendant pleaded guilty to Counts Five and Eight of that Indictment on February 3, 2020.[2] (Dkt. No. 30.)

### III. The Presentence Report

The USPO calculated defendant's USSG Total Guidelines Offense Level at 30, pursuant to the following calculations, which are consistent with the parties' plea agreement and with which the government agrees:

| | | |
|---|---|---|
| Base Offense Level | 7 | U.S.S.G. § B1.1 |
| Loss Amount | +20 | U.S.S.G. § 2B1.1(b)(1)(K) |

---

[2] Count Five charged defendant with wire fraud in violation of 18 U.S.C. § 1343 for an interstate email defendant sent to a Church email account in which the defendant impersonated an executive of the real estate developer who had purchased property from the Church; Count Eight charged defendant with bank fraud in violation of 18 U.S.C. § 1344(2) for forging a $3,700 Church check for the benefit of defendant's wife. (Dkt. No. 1 at 9, 11.)

4

|  |  |  |
|---|---|---|
| Financial Hardship | +2 | U.S.S.G. § 2B1.1(b)(2) |
| Sophisticated Means | +2 | U.S.S.G.§ 2B1.1(b)(10)(C) |
| Abuse of Position of Trust | +2 | U.S.S.G.§ 3B1.3 |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a) |

(See PSR ¶¶ 37-52.)

Noting that defendant committed the instant offense while on probation for his fraud against the religious-medical charities, the USPO calculated defendant's Criminal History Score as 3, placing him within Criminal History Category II, a calculation with which the government agrees.

With a Total Guidelines Offense Level of 30 and a Criminal History Category of II, the USPO found that the Guideline range for defendant's term of imprisonment was 108-135 months; that the maximum statutory term of imprisonment was sixty years; that $11,438,213 in restitution is owed; that any fine amount should be waived in light of the restitution owed; and that the Guidelines term of supervised release is 2-5 years. (PSR ¶¶ 106-121; Dkt. No. 31 at 6.) The government agrees with these calculations and findings.

**IV.   The Government's Sentencing Position**

With no apparent motivation or circumstance other than his criminal cupidity,[3] defendant stole more than $11.4 million from the Fifth Church of Christ, Scientist and, in the process, destroyed not only what had once been a venerable institution, but also the trust and faith that its congregants had placed in one another. Defendant

---

[3] To the extent defendant argues that his medical infirmities justify a lower sentence, it is well-established that the "the sick do not have a license to commit crime." E.g., United States v. Dachman, 743 F.3d 254, 263 (7th Cir. 2014) (affirming 120-month sentence for $4 million fraud scheme).

5

1  turned those congregants against one another; he impersonated
2  legitimate businesspeople and sent fraudulent communications in their
3  name; he intercepted the bequests of decedents and arrogated their
4  dying wishes to his limitless criminal greed; he forged checks and
5  defrauded multiple banks in the process; and he managed, he claims,
6  to have spent all of his ill-gotten gains in the process.
7       Defendant did all this not as an impulsive one-off, but as a way
8  of life. He operated three other similar schemes during the decade in
9  which he ripped off the Church and betrayed the trust of its aged
10 congregants.  (See PSR §§ 53, 57; Dkt. No. 1 at 7-8.)
11      In light of defendant's fraudulent conduct and shameless
12 recidivism, the low-end Guidelines term of imprisonment and mid-range
13 term of supervised release recommended by the USPO would fail to
14 satisfy the sentencing factors set forth in 18 U.S.C. § 3553(a).
15 Rather a within-Guidelines term of imprisonment of 130 months is
16 necessary to reflect the seriousness of defendant's offense, promote
17 respect for the law, afford adequate deterrence both to defendant and
18 the public, and, finally, protect the public from further crimes by
19 the defendant.  § 3553(a)(2)(A)-(C).  See, e.g., United States v.
20 Sotomayor, 563 Fed. Appx. 123, 124-28 (3d Cir. 2014) (affirming as
21 reasonable above-Guidelines 216-month sentence for recidivist
22 fraudster who targeted church and its members).  In similar
23 circumstances, indeed, courts of appeal have affirmed as reasonable
24 sentences "double the advisory Guidelines." United States v. Zaler,
25 405 Fed. Appx. 301, 302-310, 316-17 (affirming above-guidelines
26 sentence of 180 months for recidivist fraudster who created false
27 invoices and manipulated innocent associates while emphasizing his
28 untreated bipolar disorder).

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court impose a within-Guidelines term of imprisonment of 130 months; a five-year term of supervised release; $11,438,213 in restitution according to the schedule set forth in the PSR; and the mandatory $200 special assessment.